The Philadelphia Record Company v. Commissioner.
Philadelphia Record Co. v. Commissioner
Docket No. 108327.
United States Tax Court
1943 Tax Ct. Memo LEXIS 494; 1 T.C.M. (CCH) 486; T.C.M. (RIA) 43038; January 23, 1943
*494 Where the provisions of its amended charter, its by-laws, and its certificates of stock prohibited payment by the taxpayer of dividends on its common stock until certain amounts in money were set apart out of its surplus profits in a sinking fund for the purchase and retirement of its preferred stock so long as any of such stock remained outstanding, and where the amount so required to be set apart was not so set apart during the taxable year and preferred stock was outstanding during all the taxable year, held that petitioner is not entitled to claimed credits for that year under section 26 (c)(1) of the Revenue Act of 1936. Jerome J. Rothschild, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined an income tax deficiency against petitioner for the calendar year 1937 in the amount of $10,502.54. Petitioner assigns error in the respondent's failure, in computing its surtax or undistributed profits, to allow it a credit for that year in the total amount of its adjusted net income during that year of $171,992.29. The petitioner also claims an overpayment for the taxable year in the amount of *495 $1,649.02. The proceeding has been submitted upon the pleadings, oral testimony, exhibits, and a stipulation of facts. The stipulated facts not set forth herein are incorporated by reference. Findings of Fact The petitioner is a corporation incorporated under the laws of Pennsylvania on June 27, 1928, and is, and was at all times material here, engaged in the business of publishing a newspaper in Philadelphia of that state. The petitioner filed its income and excess-profits tax return for the year involved with the collector of internal revenue for the first district of Pennsylvania. The charter of petitioner stated that the rights, powers, restrictions, etc. of its stock to be issued would be found in its by-laws. At the first meeting of the incorporators and stockholders on June 29, 1928, by-laws were adopted, included in which were provisions as follows: (c) On or before July 1, 1934 and annually on or before the first day of July in each year thereafter, so long as any of the Preferred Stock shall be outstanding, the Directors of the corporation shall set apart for and credit to a Sinking Fund Account (known as the Preferred Stock Sinking Fund) out of the surplus profits *496 arising from the business of the corporation, a sum of money equivalent to not less than two and a half per cent (2-1/2%) of the maximum par amount of Preferred Stock theretofore issued whether or not then outstanding. Provided, however, that the Preferred Stock Sinking Fund shall be set apart from and only from the surplus profits arising from the business of the corporation that remain after full cumulative dividends on the Preferred Stock outstanding shall have been declared and paid or provided for including all dividends accrued or in arrears, and the First Preferred Stock Sinking Fund obligation shall be cumulative, so that if in any year or years said remaining surplus profits shall be insufficient to permit the full amount so required, as aforesaid, to be set aside, or if for any reason such full amount shall not be set aside, the deficiency shall be made good out of the surplus profits of the succeeding year or years before any profits shall be declared paid upon or set apart for the Common Stock. All moneys required to be set aside, pursuant to the provisions of this clause (c) shall be applied as soon as practicable, but within twelve months from the dates on which they *497 have been set aside, to the purchase of Preferred Stock at public or private sale, if obtainable, at not exceeding the redemption price hereinafter fixed. When and to the extent that such moneys are not so applied they shall be applied as soon as practicable to the redemption of Preferred Stock, as hereinafter provided. Preferred Stock redeemed or purchased under the foregoing provisions shall be retired and shall not be re-issued and no Preferred Stock shall be issued in lieu thereof or in exchange therefor. (d) Whenever but not until cumulative dividends as aforesaid on the Preferred Stock shall have been paid for all past quarterly dividend periods, and full dividends upon such stock for the current quarterly dividend period shall have been declared and paid or provided for, and whenever but not until all past due amounts required to be set apart for and credited to the Preferred Stock Sinking Fund shall have been so set apart therefor and credited thereto, such dividends as may be determined by the Board of Directors may be declared and paid on the Common Stock from time to time out of the remaining surplus profits of the Corporation; and in the event of the declaration of any *498 such dividends the holders of the Common Stock shall be entitled to the exclusion of the holders of the Preferred Stock to share ratably therein. In accordance with a resolution adopted at the annual meeting of the stockholders of petitioner on March 30, 1936, the charter of petitioner was amended in certain specified respects, one of which was to include in the amendment provisions identical with the provisions of the by-laws as above set out. The certificates of stock, both preferred and common, issued by petitioner contained provisions identical with those set out above as being in the by-laws and the amendment to the charter of petitioner. In accordance with other provisions of the resolution adopted at the above-mentioned annual meeting of petitioner's stockholders, the authorized preferred stock of petitioner was reduced by the amendment to its charter from 25,000 shares of the par value of $100 each to 17,000 shares of the par value of $100 each, of which 16,638 shares had been issued prior to January 1, 1937. Throughout the taxable year all these 16,638 shares were outstanding, except 1918 shares which had been purchased by petitioner, as hereinafter shown, in 1934, 1936, *499 and 1937. Under the amendment to its charter the authorized common stock of petitioner was increased from 75,000 shares without nominal or par value to 83,000 shares of which 81,414 shares had been issued on January 1, 1937 and were outstanding during the taxable year. From the date of its incorporation up to and including the date of the hearing no dividends had been paid on petitioner's common stock. No dividends had been paid on petitioner's preferred stock prior to March 30, 1936. Because of default in payment of dividends on its preferred stock the voting rights of the common stock of petitioner might have passed to the preferred stock and for that reason, on February 1, 1936, petitioner and the holders of all the outstanding shares of preferred stock, except the holders of 100 shares thereof, entered into an agreement by which the stockholders agreed to accept 25 per cent of the amount of dividends due up to and including April 1, 1936 in full settlement of all dividends due up to and including that date. The agreement further provided that the 25 per cent should be applied by petitioner to the purchase for the account of preferred stockholders of common stock of petitioner, *500 except that the stockholders should each receive cash for any fractional part of $25. This agreement was carried out. From the date of its incorporation dividends were paid by petitioner to its preferred stockholders as follows: Dates Paid
Amounts Paid
March 30, 1936
$180,528.83
July 1, 1936
23,898.00
Sept. 30, 1936
23,823.00
Dec. 31, 1936
22,878.00
March 31, 1937
22,383.00
June 30, 1937
22,077.00
Oct. 1, 1937
22,080.00
Dec. 18, 1937
22,080.00
During 1934 petitioner purchased 78 shares of its preferred stock at prices averaging about $45 per share, or a total of $3,510. During 1935 petitioner purchased none of its preferred stock. During 1936 petitioner purchased 1258 shares of its preferred stock on the dates and for the amounts as follows: Dates
No. of
Amounts
Purchased
Shares
Paid
January 31
100
$ 6,712.50
February 29
302
24,041.00
March 31
211
17,480.00
April 30
5
375.00
May 31
10
785.00
June 30
50
3,875.00
September 30
580
40,456.75
Total
1258
$93,725.25 The average cost per share of those shares was about $74.50. The 1336 shares of its preferred stock purchased by petitioner as above shown were carried in an account on petitioner's *501 general ledger entitled "Treasury Stock". On December 31, 1936, petitioner transferred the 1336 shares of preferred stock above-mentioned at their cost from its "Treasury Stock" account where they appeared as debit entries, to account on its general ledger entitled "Sinking Fund Stock" account where they also appeared as debits, and, on the same date, it debited the latter account with 50 additional shares preferred stock purchased at a total cost of $6500, or $130 per share. Subsequently, and during 1937, petitioner purchased 532 shares of its preferred stock at a total cost of $55,308.65 or about $103.96 per share, and debited the "Sinking Fund Stock" account with the amount of the cost of the stock. At the end of 1937 there had been debited to the "Sinking Fund Stock" account the total amount of $159,043.90 as the cost to petitioner of the 1918 shares of its preferred stock theretofore purchased by it. It was intended by petitioner when it purchased its preferred stock and placed it in its "Treasury Stock" and its "Sinking Fund Stock" accounts to eventually put such stock in the "Sinking Fund Reserve" account when such latter account was set up on its books since this was the *502 only possible use it could have had for the preferred stock so purchased. All of the 1918 shares of its preferred stock purchased by petitioner were retired in March and July 1937. The total amount due under the provisions of its amended charter, by-laws, and certificates of stock to have been set apart in a sinking fund and credited by petitioner for the purchase of its preferred stock was $166,380, up to and including December 31, 1937. The cost ($159,043.90) to petitioner of the preferred stock purchased by it up to and including December 31, 1937 was $7,336.10 less than the total amount petitioner was required by its amended charter, by-laws, and certificates of stock to set apart in a sinking fund up to and including that time and also was that much less than the amounts which had been credited to petitioner's "Sinking Fund Reserve" account hereinafter mentioned up to and including December 31, 1937. On the petitioner's general ledger there was an account designated as "Sinking Fund Reserve" account, on which there was a credit entered as of December 31, 1936 in the amount of $124,785, accompanied by a notation, "To set up Reserve - 7-1/2% of total Pfd. Stock value". On the *503 same date, there was a debit entry for the same amount in petitioner's general ledger, "Surplus" account accompanied by the notation, "To set up Sinking Fund Reserve". This was the first credit entered by petitioner on that account and was an amount equal to 7-1/2 per cent (or 2-1/2 per cent a year) for three years on the largest amount preferred stock theretofore outstanding, towit: $1,663,800; the $124,785 being also the amount which, under the restrictive provisions of petitioner's amended charter, by-laws, and certificates of stock, was due to be set apart in money up to and including the year 1936 and credited to a sinking fund account to be used for the purchase and retirement of petitioner's preferred stock. On February 28, 1937, there was credited to the "Sinking Fund Reserve" account the further sum of $16,638, and on June 30, 1937, there was credited to that account the further sum of $24,957. On corresponding dates, there were debit entries in corresponding amounts on petitioner's general ledger "Surplus" account, accompanied with the notation, "Pfd. Stock Value to Sinking Fund Reserve". The total of the latter two amounts, or $41,595, represented 2-1/2 per cent of $1,663,800 *504 which was the largest amount of preferred stock theretofore outstanding, and was the amount which, under the restrictive provisions of petitioner's amended charter, by-laws, and certificates of stock, was due to be set apart in money and credited to the sinking fund for the retirement of preferred stock in 1937. The total amount of $166,380 credited the "Sinking Fund Reserve" account was the same amount as was required to be set apart in money in a sinking fund up to and including the end of the taxable year. Petitioner had not set up "Sinking Fund Reserve" account prior to December 31, 1936 because it was required under the provisions of its amended charter, by-laws, and certificates of stock to first pay all dividends on its preferred stock and this it had not done until its settlement with its preferred stockholders on March 30, 1936. The petitioner did not at any time prior to January 1, 1938 set apart in any account entitled "Sinking Fund Cash Account" a sum, or sums, equal to the credits as shown above to have been made on its books in the "Sinking Fund Reserve" account. On June 30, 1939, a petitioner deposited in a bank cash in the amount of $11,056.79 to the credit of a "Preferred *505 Stock Sinking Fund". As of December 31, 1934 petitioner's balance sheet showed earned surplus, $425,950.20; current assets, $797,389.77; and current liabilities, $540,112.21. Petitioner's balance sheets show the following: As at December 31, 1935 -
Earned Surplus, $769,589.42
Current Assets
Cash on Hand and in Banks
$220,344.45
Accounts Receivable - Customers
$476,174.34
LESS: Reserve for Bad Debts
50,000.00
426,174.34
Accounts Receivable - Miscellaneous
5,767.70
Accounts Receivable - Officers and Employees
11,635.68
Net Cash Surrender Value of Life Insurance Policies, pledged to
secure bank loans of $113,000.00 and debenture bonds
119,100.75
Inventories - Newsprint Paper and Supplies
183,585.96
TOTAL CURRENT ASSETS
$ 966,608.88
Current Liabilities
Notes Payable - Bank
$ 45,000.00
Notes Payable - Banks, secured by net Cash Surrender Value of
Life Insurance Policies
113,000.00
Notes Payable, secured by liens on machinery
8,167.33
Bond Installments, due within one year
125,000.00
Accounts Payable
210,150.71
Accrued Payroll and Expenses
40,335.82
Deposits
5,247.50
Reserve for Federal and State Taxes
86,382.07
TOTAL CURRENT LIABILITIES
$ 633,283.43
As of December 31, 1936 -
Earned Surplus, $571,487.20.
Current Assets
Cash on Hand and in Banks
$145,387.54
Accounts Receivable - Customers
$554,445.40
LESS: Reserve for Bad Debts
71,147.04
483,298.36
Notes and Accounts Receivable - Affiliated Corporations
59,609.26
Accounts Receivable - Officers and Employees
47,300.21
Net Cash Surrender Value of Life Insurance Policies pledged to
secure bank loans of $130,000.00 and debenture bonds
151,961.82
Inventories - Newsprint Paper and Supplies
111,513.64
TOTAL CURRENT ASSETS
$ 999,070.83
Current Liabilities
Notes Payable - Bank
$ 30,000.00
Notes Payable - Machinery, due within one year
25,368.00
Notes Payable - Banks, secured by net Cash Surrender Value of
Life Insurance Policies
130,000.00
Bond Instalments, due within one year
125,000.00
Due Affiliated Corporation
905.43
Accounts Payable
299,150.40
Accrued Payroll and Expenses
11,917.71
Deposits
11,126.24
Reserve for Federal and State Taxes
119,453.93
TOTAL CURRENT LIABILITIES
$ 752,921.71
As at December 31, 1937 -
Earned Surplus, $637,829.03.
Current Assets
Cash on Hand and in Banks
$119,446.99
Accounts Receivable - Customers
$554,364.46
LESS: Reserve for Bad Debts
54,368.46
499,995.98
Accounts Receivable - Officers and Employees
58,375.73
Due from Affiliated Corporation: Accounts Receivable - Courier-
Post co
31,169.26
Net Cash Surrender Value of Life Insurance Policies, pledged to
secure bank loans of $180,000.00 and debenture bonds
187,481.00
Inventories - Newsprint Paper and Supplies
390,302.39
TOTAL CURRENT ASSETS
$1,286,771.35
Current Liabilities
Notes Payable - Banks
$165,000.00
Notes Payable - Machinery, due within one year
35,052.00
Notes Payable - Banks, secured by net cash surrender value of
Life Insurance Policies
180,000.00
Bond Installments, due within one year
62,500.00
Accounts Payable
431,457.76
Accrued Payroll and Expenses
15,344.98
Deposits
18,401.24
Due Subsidiary Corporation - New York Post, Inc
21,604.10
Reserve for Federal and State Taxes
100,315.57
TOTAL CURRENT LIABILITIES
$1,029,675.65
*506 In its Federal income tax return for the taxable year 1937 petitioner claimed the amount of $41,595 as a credit for contracts restricting dividend payments. The claimed credit was disallowed by the respondent in his deficiency notice. The petition herein was filed on August 5, 1941. Opinion TYSON, Judge: The issue presented is whether under section 26 (c) (1) of the Revenue Act of 1936 [1] the petitioner is entitled to a credit of $171,992.29, the amount of its adjusted net income in the taxable year, in determining its undistributed profits tax for that year. In our findings of fact it is shown (1) that in its amendment to its charter, its by-laws, and in its certificates of stock petitioner was prohibited from paying dividends on its common stock until there had been set apart in a sinking fund a sum of money, out of its surplus profits, on or before July 1, 1934, and on or before July 1 of each succeeding year, an amount equal to 2-1/2 per cent of the maximum par amount of its preferred stock theretofore issued, whether or not then outstanding, until all preferred stock was retired; (2) that prior to, and including the taxable year, 16,638 shares of its preferred stock had been *507 issued and that the amount of money required to be set apart each year, including the taxable year, was $41,595; (3) that the amounts to be so set apart were to be used for the purchase and retirement of its preferred stock until all of such stock was retired; (4) that throughout the taxable year there was unretired outstanding preferred and common stock; and (5) that neither during the taxable year nor at any time prior to January 1, 1938 had the full amount required to be set apart in a sinking fund been so set apart in any account entitled "Sinking Fund Cash Account", nor had a sum, or sums, equal to the periodic credits made on its books in an account entitled "Sinking Fund Reserve Account" been so set apart. *508 Under the facts stated, and other facts of record, our inquiry is immediately directed to the question of whether or not the restrictive provisions with regard to the payment of dividends on its common stock contained in its amended charter, by-laws, and certificates of stock bring petitioner within the protective provisions of section 26 (c) (1), supra, relative to the credit to which it claims it is entitled. We are of the opinion, and so hold, that petitioner is not entitled to such a credit by reason of the restrictions on its payment of dividends on its common stock contained in its amended charter, by-laws, and certificates of stock. In making this holding we do not overlook the holding of the Circuit Court of Appeals for the Third Circuit in , reversing , but notwithstanding the high esteem in which we hold that Court and the profound respect we have for its pronouncements, we feel impelled to adhere to our previously announced interpretation of the statute involved, ; *509 ; , affirmed ; and , although our interpretation is contrary to the interpretation of that statute by the Circuit Court of Appeals for the Third Circuit in the above cited case. Especially are we so impelled in view of the holdings of the Circuit Court of Appeals for the Sixth Circuit in , certiorari denied January 11, 1943; ; and ; and the more recent holdings by the Circuit Courts of Appeals for the First and Seventh Circuits in , and ; all of which are in accord with our announced interpretation of the *510 statute here involved. Cf. ; ; ; ; and . But even if we are in error in making the foregoing holding, and if it be assumed that the restrictive provisions in petitioner's amended charter, by-laws, and certificates of stock constituted a written contract within the purview of section 26 (c) (1), supra, we are of the opinion that, on other grounds as we will proceed to set out, the petitioner is not entitled to the credit claimed. Petitioner contends that in order to comply with the restrictive provisions of its amended charter, by-laws, and certificates of stock it was necessary to set the required amount apart in money, and so earmarked, in a sinking fund account in a bank and that the credit entries on the "Sinking Fund Reserve" account of an equivalent amount did not comply with such provisions. Assuming, but not so *511 deciding, that the credit entries on the "Sinking Fund Reserve" account did not comply with the restrictive provisions of petitioner's amended charter, by-laws, and certificates of stock, it is nevertheless true that the entries on the other two accounts, i.e., the "Treasury Stock" account and the "Sinking Fund Stock" account show that, prior to the end of the taxable year, petitioner had purchased 1918 shares of its preferred stock and expended therefor the total amount of $159,043.90, and it is further shown that during the taxable year petitioner retired the stock so purchased. If the stock so purchased and retired complied, to the extent of its cost, with the requirement that money should be set apart in a sinking fund for the purchase of and retirement of petitioner's preferred stock, then up to and including the end of the taxable year petitioner had fulfilled that requirement, except to the extent of $7,336.10, since the total amount it had expended up to and including the end of that year in purchasing such stock was $159,043.90 and the total amount which it was required under the restrictive provisions of its amended charter, by-laws, and certificates of stock to set apart *512 in a sinking fund up to the end of that year was $166,380. In our opinion, the amount expended by petitioner for the purchase of its preferred stock complied, to the extent of its cost, with the requirements of its amended charter, by-laws, and certificates of stock to set money apart in a sinking fund in an equal amount, since the sole purpose of those requirements was to provide for the purchase and retirement of petitioner's preferred stock and when such purpose had been accomplished by the actual purchase of the stock itself, the requirements, to the extent of the cost to petitioner of such stock, had been satisfied. Having reached this conclusion, the inquiry is presented of whether or not petitioner could have set aside in its sinking fund, during the taxable year, the sum of $7,336.10, the only amount remaining due to be so set apart at the end of that year, and, as a consequence, have been released from the restrictions on the payment of dividends on its common stock. On January 1, 1936, (assuming the same figures as appear on its balance sheet of December 31, 1935) petitioner's earned surplus was $769,589.42; its current assets were $966,608.88, of which $220,344.45 was *513 cash; and its current liabilities were $633,283.43. During 1936 petitioner expended $100,225 for the purchase of some of its preferred stock. On January 1, 1937, (assuming the same figures as appear on its balance sheet of December 31, 1936) petitioner's earned surplus was $571,487.20; its current assets were $999,070.83, of which $145,387.54 was cash; and its current liabilities were $752,921.71. During 1937 petitioner expended $55,308.65 for the purchase of some of its preferred stock. On December 31, 1937, petitioner's earned surplus was $637,829.03; its current assets were $1,286,771.35, of which $119,446.99 was cash; and its current liabilities were $1,029,675.65. We have here a situation existing in the taxable year as follows: petitioner at the beginning of that year had a large earned surplus; that earned surplus had been increased at the end of the year by $66,341.83, notwithstanding distributions during the year of dividends in the amount of $88,620 and the expenditure during the year of $55,308.65 for the purchase of petitioner's preferred stock; and petitioner had on hand large cash balances at the beginning of and at the end of the year. In such a situation we are *514 of the opinion that petitioner was financially able, with due regard to its business needs, to pay into a sinking fund during the taxable year for the purchase and retirement of its preferred stock the sum of $7,336.10 in addition to the $55,308.65 expended by it during that year for the purchase of its preferred stock, thus satisfying the obligations contained in its amended charter, by-laws, and certificates of stock and removing the restrictions on payment of dividends on its common stock. , aff'd, . Cf. ; and . The president of petitioner testified that it did not set apart, in the taxable year, any money in a separate sinking fund account sufficient to meet the requirements for that fund in that year because: it had been the policy and record of petitioner to consider as a safe ratio, the ratio of twice as many current assets as there were current liabilities; that at no time during the taxable year were *515 the current assets sufficient to pay all current liabilities and also warrant the setting apart in the sinking fund of the amount remaining due to be so set apart during that year; and it was very short of cash. The testimony of this witness to the effect that the policy and record of the petitioner was to maintain current assets in twice the amount of its current liabilities was clearly inaccurate, since the record shows: that as of December 31, 1934 the current assets lacked $282,834.65 of being twice the current liabilities on that date and were only 1.48 times those liabilities; that as of December 31, 1935, the current assets lacked $299,957.98 of being twice the amount of the current liabilities on that date and were only 1.53 times those liabilities; that as of December 31, 1936, the current assets lacked $506,772.59 of being twice the current liabilities on that date and were only 1.33 times those liabilities; and that as of December 31, 1937, the current assets lacked $772,579.95 of being twice the amount of current liabilities on that date and were only 1.25 times those liabilities. The testimony of this witness that at no time during the taxable year were the current *516 assets of petitioner sufficient to pay all current liabilities and also warrant the setting apart of the balance remaining due the sinking fund and his testimony that petitioner was very short of cash are conclusions which are not borne out by the facts shown by the record and upon which we have based our own conclusion that petitioner obviously was able financially in the taxable year to pay into a sinking fund the requisite amount for that year. The petitioner is not entitled to any credit under section 26 (c) (1) of the Revenue Act of 1936. Decision will be entered under Rule 50. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS (c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩